[No. B088348. Second Dist., Div. Five. Dec. 2, 1996.]

EDWARD W. YOUNAN, Plaintiff and Appellant, v.
PAUL CARUSO, Defendant and Respondent.

**COUNSEL**

William H. Randall for Plaintiff and Appellant.

Paul Caruso and Thomas M. Byrne for Defendant and Respondent.

**OPINION**

**GODOY PEREZ, J.**—Plaintiff Edward W. Younan appeals from the order dismissing his legal malpractice complaint against defendant Paul Caruso. For the reasons set forth below, we affirm that order.

## FACTS AND PROCEDURAL HISTORY

Plaintiff and appellant Edward W. Younan (Younan or appellant) was convicted in 1985 of molesting his young stepdaughter. The lawyer who defended him in that criminal prosecution is the defendant and respondent here, Paul Caruso (Caruso or respondent). Younan was sentenced to state prison and released in February 1991. On January 15, 1992, Younan filed a lawsuit against Caruso alleging legal malpractice in connection with Caruso's defense of the molestation charge.

The critical portion of Younan's complaint alleges that Caruso "failed to investigate the charges and to call professional witnesses on [Younan's] behalf . . . . Defendant negligently and carelessly failed to interview witnesses to support the position of the Plaintiff and to investigate the claim of the prosecution or to call witnesses to testify on [Younan's] behalf . . . as requested by [Younan] and as needed to find [him] not guilty."

In August 1994 Caruso moved for dismissal of Younan's complaint on the ground that the earlier denial of Younan's habeas corpus petition—based on a claim of ineffective assistance of counsel—collaterally estopped Younan from relitigating the issue of Caruso's competence. The court granted that motion in a minute order dated September 2, 1994.[1]

The superior court judge who considered Younan's habeas corpus petition issued a written decision on October 30, 1987. After having heard the testimony in the criminal prosecution, reviewed the files and transcripts of a related juvenile proceeding, and conducted an evidentiary hearing on Younan's writ, the court found "that [Younan] has not shown that his trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate. Defendant failed to establish his trial counsel, Paul Caruso, by failing to call Doctors Clark and Athrope [sic],[2] resulting in the withdrawal of a potentially meritorious defense [sic]."

As to Dr. Apthorpe, Caruso was aware of the doctor's reports, had seen him testify in another case, and determined he would not be an effective witness. Apthorpe did not examine the victim and his report was "couched in 'possibilities' and speculation . . . ." The opinions of a Dr. Kent about Younan's propensities to act in one way or another were probably inadmissible at trial, the court found. Younan's claim that Caruso made no attempt

---

[1]Caruso also moved under Code of Civil Procedure section 583.410 for discretionary dismissal based on Younan's alleged delay of prosecution. The court denied the dismissal motion on that ground.

[2]The correct spelling is "Apthorpe."

to refute the prosecution's medical testimony "is not supported by the record. While counsel made sound tactical decisions not to call Drs. Kent and Athorpe [*sic*], he skillfully cross-examined the People's witnesses. Such a tactical decision does not withdraw a potentially meritorious defense."

The final contention of attorney incompetence considered in the habeas corpus decision concerned Caruso's failure to call his investigator—a qualified accident reconstruction expert—to testify and collaborate Younan's version of events. The court noted that Younan "told varying versions of how the 'accident' which caused the victim's injuries occurred, testifying differently in the trial than in the juvenile proceedings. [¶] [Younan] has offered no proof or declaration as to how the failure to retain or call an accident reconstruction expert resulted in the withdrawal of a potentially meritorious defense."

Younan contends on appeal, as he did below, that collateral estoppel may not be applied here because the standards and burdens of proof placed on him in connection with his habeas corpus petition were far greater than those required to prove a claim for simple negligence.[3] He does not contend that his malpractice action is based on facts which are either new or different from those adjudicated against him at his 1987 habeas corpus hearing.

DISCUSSION

1. *Collateral Estoppel*

 "Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding. [Citations.]" (*People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321], fn. omitted, hereafter *Sims.*) While the related doctrine of res judicata prevents relitigation of a cause of action once adjudicated, collateral estoppel prevents the retrial of issues, in a second action, already tried in a previous action. (*Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667, 671 [206 Cal.Rptr. 785].)

There are three prerequisites before collateral estoppel can be invoked: (1) the issue necessarily decided at the previous proceeding is identical to one

---

[3]Younan also moved below for reconsideration of the dismissal order. After granting reconsideration, the trial court affirmed its order. Younan has raised no arguments on appeal concerning that motion. Younan's reconsideration motion was also based on Caruso's purported failure to properly seek judicial notice of the 1987 habeas corpus decision, an argument which he renews on appeal. His failure to timely object to the propriety of judicial notice in opposition to Caruso's dismissal motion is deemed a waiver of that objection. (Evid. Code, § 353, subd. (a).)

which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. (*Sims, supra,* 32 Cal.3d at p. 484.) Only issues actually litigated in the first action may be precluded by collateral estoppel. An issue is actually litigated when it is properly raised by the pleadings or otherwise, is submitted for determination and is actually determined. A determination may be based on a failure of proof. (*Ibid.*)

Our inquiry does not end when these threshold requirements are met, however. Instead, we must also consider whether application of collateral estoppel in a particular case will advance the public policies which underlie the doctrine. (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 342-343 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995], hereafter *Lucido.*) The purposes of the doctrine are to promote judicial economy by minimizing repetitive litigation, prevent inconsistent judgments which undermine the integrity of the judicial system and to protect against vexatious litigation. (*Id.* at p. 343.)

### 2. *Habeas Corpus Proceedings*

A person improperly deprived of his liberty has the right to petition for a writ of habeas corpus. (Cal. Const., art. I, § 11; *People* v. *Duvall* (1995) 9 Cal.4th 464, 474 [37 Cal.Rptr.2d 259, 886 P.2d 1252], hereafter *Duvall.*) The *Duvall* court recently summarized the rules applicable to habeas corpus proceedings, which are set forth in Penal Code section 1473 et seq. Because such a petition seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden to first plead sufficient grounds for relief, then prove them. (9 Cal.4th at p. 474.)

The pleading stage takes place in three steps—the convicted defendant's petition, the prosecution's return, and the defendant's traverse. The petition must contain specific factual allegations, not mere conclusions. If those allegations, accepted as true, would entitle the petitioner to relief, the court issues either a writ or an order to show cause (OSC). When the court does so, it has made only a preliminary assessment that the petitioner would be entitled to relief if his allegations are true. The respondent—the prosecution—must then file a factually specific pleading called a return which responds to the issues raised by the petition in an attempt to justify the confinement. In reply, the petitioner may either file another responsive pleading called a traverse or the parties may stipulate that the petition itself be treated as such. (Pen. Code, §§ 1474, 1480, 1484; *Duvall, supra,* 9 Cal.4th at pp. 474-478.)

This procedure joins for review both factual and legal issues. Defining these issues is important because issues not raised in the pleadings need not be addressed. If the court finds that no material facts are in dispute after reviewing the return and traverse, it may decide the merits without an evidentiary hearing. If the court does find that material facts are in dispute, then it will hold an evidentiary hearing. (9 Cal.4th at p. 478.) In such proceedings, trial counsel has the opportunity to fully describe his reasons for acting or failing to act in the manner complained of. (*Ibid.*)

Issuance of the writ or an OSC does more than simply afford the petitioner an opportunity to present evidence in support of the petition's allegations—it institutes a proceeding or cause in which issues of fact are to be framed and decided in a written opinion. (*In re Hochberg* (1970) 2 Cal.3d 870, 875-876, fn. 4 [87 Cal.Rptr. 681, 471 P.2d 1]; *People v. Pacini* (1981) 120 Cal.App.3d 877, 884 [174 Cal.Rptr. 820].)

### 3. Elements of Legal Malpractice and Claims for Habeas Corpus Relief Based on Allegations of Ineffective Assistance of Counsel

■ An attorney is liable for malpractice—negligence in the performance of his duties—in accordance with general tort law principles. (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 311, p. 380.) The elements of a cause of action for legal malpractice are: (1) the lawyer's duty to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage. (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1621 [33 Cal.Rptr.2d 276].)

■ It is well settled that ineffective assistance of counsel at a criminal trial is a constitutional violation giving rise to a claim for relief. (*In re Alvernaz* (1992) 2 Cal.4th 924, 934 [8 Cal.Rptr.2d 713, 830 P.2d 747].) The petitioner must first show by a preponderance of substantial evidence that his counsel's performance was deficient. If that prong is established, the petitioner must still show prejudice—that it is reasonably probable the outcome would have differed absent trial counsel's ineffective representation. (*Id.* at pp. 936-937, 944-945.)

The deficiency prong requires proof that trial counsel's representation "fell below an objective standard of reasonableness under prevailing professional norms . . . ." (2 Cal.4th at p. 936; *People v. Thomas* (1992) 2 Cal.4th 489, 530 [7 Cal.Rptr.2d 199, 828 P.2d 101].) Thus, the habeas standard for

gauging the effectiveness of trial counsel is the same as in a legal malpractice action—whether counsel performed as a reasonable lawyer would have under prevailing professional norms or standards.

## 4. *The Threshold Requirements of Collateral Estoppel Were Met*

 It is clear that Younan was a party to both the 1987 habeas corpus proceeding which he instituted and his legal malpractice action, thus satisfying the third requirement of collateral estoppel. Younan contends that the first requirement—identity of the issues litigated—is not met because the trial court in the habeas proceeding relied on *People* v. *Camden* (1976) 16 Cal.3d 808 [129 Cal.Rptr. 438, 548 P.2d 1110] (hereafter *Camden*), which held that it had to view the evidence in the light most favorable to the prosecution (*id.* at p. 812) and that ineffective assistance of counsel could only be shown in an extreme case. (*Id.* at p. 815.) The latter proposition was overruled in *People* v. *Pope* (1979) 23 Cal.3d 412, 421-424 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], in favor of the current standard of reasonable competence.

The trial court which considered Younan's habeas corpus petition did cite to *Camden*, but only for the general proposition that Younan bore the burden of proof. The court in *Pope* cited *Camden* for the same proposition. (*People* v. *Pope*, *supra*, 23 Cal.3d at p. 425.) That burden is a preponderance of the evidence (*In re Alvernaz*, *supra*, 2 Cal.4th at p. 934), the same as in a civil trial. Reading the habeas corpus decision itself verifies that the trial court was guided by the current standard for determining whether counsel rendered ineffective assistance since the court found that Younan failed to show Caruso did not "act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate."

As for the statement in *Camden* that the evidence would be viewed in the light most favorable to the prosecution, the court was merely reciting the appropriate standard of *appellate* review. There is no indication that the trial court applied that standard when considering the evidence presented at Younan's habeas corpus hearing. We therefore reject appellant's contention that some higher burden of proof exists or was applied on the issue of counsel's effectiveness.[4] The legal issues raised at Younan's habeas corpus hearing were therefore the same as those raised in his legal negligence complaint.

---

[4]Had the trial court's order been based on the lack of prejudice, however, our opinion might well be different, since a habeas corpus petitioner must do more than show harm by a preponderance of the evidence but must instead show that it is reasonably probable trial counsel's poor representation prejudiced him. Collateral estoppel will not ordinarily apply if

Further, Younan does not contend that the factual issues raised by his malpractice complaint differ in any way from those involved in his habeas corpus petition—whether Caruso breached prevailing professional norms by his failure to call as witnesses an accident reconstruction expert and certain doctors.[5] Those issues were resolved against Younan when the court found—after a full evidentiary hearing—that Caruso in fact made "sound tactical decisions" not to call the physicians and that Younan offered no proof at all on the issue of the accident reconstruction expert.[6] (*Sims, supra,* 32 Cal.3d at p. 484 [an issue is actually litigated when it is properly raised by the pleadings or otherwise, is submitted for determination and is actually determined. A determination may be based on a failure of proof].)

Resolution of the remaining threshold requirement—whether there was a final judgment on the merits—requires an examination of the judicially created policy against repetitious habeas corpus petitions.

■ While a final judgment granting habeas corpus relief is res judicata (*In re Fain* (1983) 139 Cal.App.3d 295, 301 [188 Cal.Rptr. 653]), an order denying the writ is not. (*In re Clark* (1993) 5 Cal.4th 750, 773 [21 Cal.Rptr.2d 509, 855 P.2d 729], hereafter *Clark.*) Even so, the right to bring successive habeas corpus petitions has long been restricted by both statute and judicially created policy. (*Id.* at pp. 764-765, 766-768, 770-774.) The court in *Clark* clarified these rules, making it clear that successive habeas corpus petitions based on claims which could have been adjudicated in previous petitions are not permitted, except in rare instances where a fundamental miscarriage of justice has occurred. Such a miscarriage occurs when: a trial was so fundamentally unfair that, absent the error, no reasonable trier of fact would have convicted the defendant; the petitioner is actually innocent of the crime charged; the death penalty was imposed based on a grossly

---

the party sought to be bound by a previous factual determination faced a higher burden of proof in the first proceeding than is required by the current proceeding. (*Holt* v. *Department of Food & Agriculture* (1985) 171 Cal.App.3d 427, 433 [218 Cal.Rptr. 1].)

[5]Younan admitted as much in his reply brief in support of his reconsideration motion. Focusing on the purported differing burdens of proof, Younan stated, "it is true the elements of collateral estoppel are present between [my] criminal matters and this civil action, [but] the respective burdens are different . . . ."

[6]Caruso's failure to have an accident reconstruction expert testify at Younan's trial was a relatively new factual allegation at the time of the 1987 habeas corpus hearing. In 1985, Younan sought both habeas corpus relief and a writ of prohibition or mandate at the appellate level based on Caruso's failure to call Drs. Kent and Apthorpe as witnesses. Those petitions, which were summarily denied, made no mention of an accident reconstruction expert. (*Younan* v. *Superior Court* (Aug. 13, 1985) B015515 [nonpub. opn.]; *In re Younan* (July 16, 1985) B015005 [nonpub. opn.].) A third habeas corpus petition was filed by Younan in propria persona in 1988, but raised no allegations of attorney neglect. That petition was also summarily denied. (*In re Younan* (Apr. 7, 1988) B033713 [nonpub. opn.].)

misleading profile of the petitioner; or the conviction was obtained under an invalid statute. (*Id.* at pp. 797-798.)

Under Penal Code section 1475, for example, when a habeas corpus writ or OSC issues and a hearing is held, claims adjudicated at that hearing cannot be the subject of another habeas corpus petition to the same level of court. Instead, only a higher court can entertain another petition on the same grounds. That statute is not the only limitation on successive petitions, however. (*Clark, supra,* 5 Cal.4th at p. 774.) In the case of issues raised and determined in prior habeas proceedings, " 'It is the policy of this court to deny an application for habeas corpus which is based upon grounds urged in a prior petition which has been denied, where there is shown no change in the facts or the law substantially affecting the rights of the petitioner. [Citations.] . . . .' " (*Id.* at p. 769.) "Willingness by the court to entertain the merits of successive petitions seeking relief on the basis of the same set of facts undermines the finality of the judgment. Moreover, such piecemeal litigation prevents the positive values of deterrence, certainty, and public confidence from attaching to the judgment. The values that inhere in a final judgment are equally threatened by petitions for collateral relief raising claims that could have been raised in a prior petition." (*Id.* at p. 770.)

 Under this rule, any further habeas corpus petitions by Younan on the same factual grounds as his 1987 petition would have been summarily denied. (*Clark, supra,* 5 Cal.4th at p. 797.) Even had he alleged new facts, any such petitions would only have been considered if Younan justified his delay in presenting those facts and demonstrated a fundamental miscarriage of justice. Younan never sought further habeas corpus relief on the basis of any new facts relating to the quality of Caruso's representation, however, and does not advance any new factual grounds as the basis for his malpractice claim either. Given this judicially created policy, the 1987 decision denying Younan's request for habeas corpus relief was, for all intents and purposes, final as to the facts adjudicated.

### 5. *Policy Reasons for Application of Collateral Estoppel*

As noted above, a decision denying habeas corpus relief is not res judicata. Collateral estoppel and res judicata have distinct meanings, however, with the latter deemed a matter of "claims preclusion" and the former a matter of "issue preclusion." (*Lucido, supra,* 51 Cal.3d at p. 341, fn. 3.) When child custody issues are pursued through a writ of habeas corpus, in the absence of changed circumstances, factual issues decided in a previous habeas corpus application are binding in the new habeas corpus proceeding

under collateral estoppel principles. (*In re Richard M.* (1975) 14 Cal.3d 783, 790-791 [122 Cal.Rptr. 531, 537 P.2d 363]; *In re Croze* (1956) 145 Cal.App.2d 492, 494-495 [302 P.2d 595] ["Where habeas corpus proceedings have been prosecuted in the superior court and that court has made findings of fact, its order is res judicata of the issues tendered, tried, and decided by the superior court; and the petitioner, if unsuccessful in the superior court, is estopped in the absence of a change in circumstances from again trying those issues upon a petition to the District Court of Appeal for a writ of habeas corpus. [Citations.]"].) The same is true of issues tried and adjudicated in a criminal case habeas corpus proceeding which are then urged as the basis for a motion to set aside an indictment. (*People* v. *Egan* (1946) 73 Cal.App.2d 894, 898 [167 P.2d 766].) Factual determinations made in state court habeas corpus proceedings are also given collateral estoppel effect in federal civil rights actions. (*Burgos* v. *Hopkins* (2d Cir. 1994) 14 F.3d 787, 792-793 [applying New York law]; *Sperl* v. *Deukmejian* (9th Cir. 1981) 642 F.2d 1154, 1155.)

■ We see no reason not to apply collateral estoppel principles here as well. The different settings involved make no difference and the proper focus is on the "substantive differences that integrally relate to the public policies underlying the [collateral estoppel] doctrine." (*Lucido, supra,* 51 Cal.3d at p. 345, fn. 6.) In *Sims, supra,* 32 Cal.3d 468, a state welfare agency administrative ruling absolving a welfare recipient of welfare fraud was held to collaterally estop criminal proceedings based on the same charge. In contrast, the *Lucido* court declined to collaterally estop a criminal prosecution for indecent exposure even though a probation review board held that the same conduct would not support its decision to revoke the defendant's probation.

The *Lucido* court reconciled these rulings by pointing to the unique statutory scheme for resolving welfare fraud which was at issue in *Sims.* (*Lucido, supra,* 51 Cal.3d at p. 345.) Given the greatly differing purposes between probation revocation hearings and criminal trials, the Supreme Court held it would undermine the criminal court's function as the forum for determining guilt or innocence to collaterally estop a criminal prosecution based on the outcome of a probation hearing. (*Id.* at pp. 347-350.) For instance, a probation revocation hearing assesses whether conditions relating to punishment for a previous crime have been violated so probation can be revoked or modified, while a criminal prosecution seeks a conviction for a wholly new offense. Even though the probationer faces the threat of losing his probationary status, he is not threatened with the stigma of a new conviction or punishment beyond that which he might well have received for his earlier offense. The hearing judge in a probation revocation hearing does

not determine whether the probationer is guilty or innocent of a crime, but whether the terms of probation were violated and, if so, whether the probationer should retain his conditional liberty. (*Ibid.;* see also *Lockwood* v. *Superior Court, supra,* 160 Cal.App.3d at p. 672 [despite differences between the two types of proceedings, juvenile court determination in dependency hearing that no child abuse occurred collaterally estopped criminal prosecution for the same conduct].)

True, the purposes of a habeas proceeding based on ineffective assistance of counsel and legal malpractice action based on the same alleged conduct differ greatly. The former seeks to obtain the petitioner's freedom while the latter seeks money damages. In this case, however, the differences actually work in favor of applying collateral estoppel. Younan cannot and does not contend that some lesser interest motivated him to hold back where his freedom was concerned and it is clear he had at least as great, and arguably a greater, stake in prosecuting the habeas corpus proceeding.

Issuance of the habeas corpus writ or an OSC in response to a habeas corpus petition does more than give the petitioner the opportunity to offer supporting evidence. It institutes a proceeding or cause in which issues of fact are to be framed or decided in a written opinion. (*In re Hochberg, supra,* 2 Cal.3d at pp. 875-876, fn. 4.) The court must "proceed in a summary way to hear such proof as may be produced . . . and [has] full power and authority to require and compel the attendance of witnesses, by process or subpoena and attachment, and to do and perform all other acts and things necessary to a full and fair hearing and determination . . . ." (Pen. Code, § 1484.)

Permitting Younan to pursue his negligence claim after fully adjudicating the same factual issues at his habeas corpus proceeding puts the integrity of the judicial system at stake in two ways. First, there is the spectre of inconsistent verdicts should he prevail, casting great doubt on the factfinding process by which the trial court determined that Caruso's trial conduct was competent. Second, it runs counter to the important judicially created policy which prohibits successive habeas corpus petitions based on factual allegations already determined in prior habeas corpus proceedings. If he would not have been allowed to seek his freedom by way of successive habeas corpus applications based on the same facts, neither should he seek money damages for the same conduct when those facts have already been determined against

him. Of course, this ruling also promotes the other important collateral estoppel policy of judicial economy by eliminating repetitive litigation.[7]

## DISPOSITION

For the reasons set forth above, the order of dismissal is affirmed. Respondent to recover his costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

---

[7]Our holding is limited to the facts of this case, where the civil malpractice complaint is based on the same factual allegations of attorney neglect which were actually determined after a full evidentiary hearing in the habeas corpus proceeding.