**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RICKY GONZALES,
　　　　　　*Plaintiff-Appellant*,

　　　　　v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS,
　　　　　　*Defendant-Appellee*.

No. 11-15851

D.C. No.
3:10-cv-01317-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, Senior District Judge, Presiding

Argued and Submitted
November 5, 2013—Pasadena, California

Filed January 15, 2014

Before: Diarmuid F. O'Scannlain, Susan P. Graber,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

# SUMMARY*

## Prisoner Civil Rights

The panel affirmed in part and reversed in part the district court's dismissal of a complaint in a 42 U.S.C. § 1983 action brought by a California state prisoner who challenged his validation as a gang member and his transfer to a Secured Housing Unit for an indeterminate term, and remanded.

The panel held that the district court properly concluded that the claim-preclusive effect of California's denial of plaintiff's habeas petition barred nineteen of plaintiff's twenty causes of action. The panel further held, however, that the district court erred by dismissing plaintiff's Eighth Amendment challenge to the debriefing process for lack of standing. "Debriefing" is the process by which validated gang members renounce their gang membership, divulge any gang-related information, and earn their release back into the prison's general population. The panel held that construed liberally, plaintiff's complaint alleged that he would attempt to debrief, which he was eligible to do, but for the risk of retaliation. The panel held that was sufficient to establish standing and reversed and remanded.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Ryan S. Killian (Certified Law Student) and Zach Tafoya (Certified Law Student), Pepperdine University School of Law Ninth Circuit Appellate Advocacy Clinc, Malibu, California, argued the cause and Jeremy B. Rosen, Horvitz & Levy LLP, Encino, California, filed the briefs for the Plaintiff-Appellant.

Kenneth T. Roost, Deputy Attorney General, San Francisco, California, argued the cause and filed the brief for the Defendant-Appellee. With him on brief were Kamala D. Harris, Attorney General of California, Jonathan L. Wolff, Senior Assistant Attorney General, and Thomas S. Patterson, Supervising Deputy Attorney General, San Francisco, California.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a state court decision on a California prisoner's habeas corpus petition precludes any claims he might have under federal law.

I

A

Ricky Gonzales has been in custody of the California Department of Corrections at Pelican Bay State Prison since 2004, when he was found guilty of two counts of attempted murder and assault with a semi-automatic firearm, and given

an enhanced sentence for discharge of the firearm and possession of a firearm by a gang member. In January 2007, Gonzales was moved from the general population into administrative segregation and the Institutional Gang Investigators ("IGI") began an inquiry into his possible gang affiliation.

In early May, IGI presented Gonzales with four pieces of evidence indicating his affiliation with the Northern Structure prison gang. First, during a search of his cell, prison staff found a typed letter dated April 5, 2007, identifying other validated gang members at Pelican Bay and informing him of gang activity at other prisons. Two other letters, both dated March 28, 2007, also related to gang activity and were used to corroborate the April letter.

Second, prison staff found two pieces of artwork depicting the "Huelga Bird," a symbol associated with Northern Structure. One of the pieces of artwork came from the magazine *Lowrider*.

Third, prison staff discovered an address card containing the name and contact information of Jeremy Louden, an inmate at Pelican Bay who had been validated as a member of Northern Structure. Gonzales asserts that he and Louden were former cellmates and communicated "strictly for the purpose of assisting . . . with legal aid." According to CDC, the card not only demonstrated Gonzales's ability to communicate with a gang member, but also could be used as a token to enhance Gonzales's reputation within the gang.

Fourth, a confidential memorandum from an informant indicated that Gonzales had "intimate knowledge" of assaults planned within the prison by Northern Structure. This final

piece of evidence was determined not to meet departmental standards because the informant had not specifically identified Gonzales as a member of the gang.

Gonzales disputed each piece of evidence. IGI sent a validation package containing the evidence and Gonzales's response to the Office of Correctional Safety, which validated Gonzales as a member of Northern Structure. Because he had "proven a threat to the security of the institution by his association with a prison gang engaged in a criminal conspiracy against the safety of others," Gonzales was transferred to the Secured Housing Unit ("SHU") for an indeterminate term.

B

After exhausting all administrative remedies, Gonzales filed a state habeas petition challenging the evidentiary basis for his confinement in the SHU and seeking release from such confinement. After ordering and receiving a response from the state, the Superior Court denied the petition. It concluded that the source documents constituted "some evidence" that Gonzales was a gang associate, which was sufficient for due process purposes, *see Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986), and that the documents constituted three independent sources indicative of association with a validated gang member or associates as required by 15 California Code of Regulations § 3378(c)(4). Subsequently, the California Court of Appeal for the First Appellate District and the Supreme Court of California rejected his appeals.

C

On March 29, 2010, Gonzales filed this suit under 42 U.S.C. § 1983 in the district court. His complaint asserted twenty causes of action, which include: (1) the gang validation violated his rights to free speech and association under the First Amendment; (2) the validation regulations were applied in a racially discriminatory manner; (3) he was classified as a gang member as retaliation for refusing to waive his right to medical treatment; (4) his validation based on documents that did not constitute "some evidence" violated his due process rights; and (5) the prison's debriefing[1] procedures violated the Eighth Amendment.

Before the complaint was answered, the district court ordered Gonzales to show cause why his complaint should not be dismissed as barred by claim or issue preclusion and to file copies of both his state habeas petition and the Superior Court's disposition. After receiving such filings, the district court concluded that Gonzales's § 1983 action was barred by claim preclusion.[2] The court also denied Gonzales's request, conditioned on his complaint surviving the show cause order, to amend his complaint to add an Eighth Amendment challenge to the conditions of his confinement in the SHU.

---

[1] "Debriefing" is the process by which validated gang members renounce their gang membership, divulge any gang-related information, and earn their release back into the prison's general population.

[2] The court dismissed Gonzales's Eighth Amendment challenge to the debriefing process for lack of standing.

The court entered judgment dismissing with prejudice. Gonzales timely appealed, arguing that the district court should not have dismissed his retaliation, First Amendment, and Equal Protection claims as precluded, should not have dismissed his Eighth Amendment claim for lack of standing, and should not have denied his conditional motion to amend his complaint.

II

Gonzales first contends that California habeas decisions should be afforded issue-preclusive, but not claim-preclusive, effect on subsequent civil litigation for damages.[3]

The Federal Full Faith and Credit statute, 28 U.S.C. § 1738, requires federal courts to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). We have considered the preclusive effect of California habeas judgments on § 1983 litigation in two previous cases: *Silverton v. Department of Treasury*, 644 F.2d 1341 (9th Cir. 1981), and *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009).

---

[3] For clarity, our Opinion refers to "claim preclusion" and "issue preclusion" rather than "res judicata" and "collateral estoppel." *See Taylor v. Sturgell*, 553 U.S. 880, 892 & n.5 (2008). Claim preclusion "forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* at 892 (internal quotation marks omitted). Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal quotation marks omitted).

A

In *Silverton*, we were faced with the question whether "a § 1983 claim [may] be precluded by a prior adjudication on that claim in a state habeas proceeding," and concluded that, "because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical *issue* from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards." 644 F.2d at 1346–47 (emphasis added). In other words, "if a state hearing is a 'full and fair hearing' for federal habeas purposes, this is also sufficient to mandate that [issue preclusion] be applied." *Id.* at 1347.

We did not settle in that case whether claim preclusion also should apply to state habeas proceedings. We noted that the Supreme Court had left open whether "claims which could have been raised but were not are . . . precluded in § 1983 actions," but decided it was "not necessary for this court to meet the dangling question in this case." *Id.* at 1346 (citing *Allen v. McCurry*, 449 U.S. 90, 97 n.10 (1980)).

In *Brodheim*, a California prisoner appealed the district court's judgment that his § 1983 claims were barred by the claim-preclusive effect of a state habeas judgment. 584 F.3d at 1264. We reversed because the district court had applied the federal approach to claim preclusion, rather than California's approach, under which Brodheim's claims were not barred. *Id.* at 1268–69. Fully analyzing the district court's dismissal based on claim preclusion, we concluded that "the federal action was not barred by the state court's decision." *Id.* at 1269.

Nonetheless, Gonzales correctly notes that neither party in *Brodheim* raised the issue whether California habeas determinations have claim-preclusive effect at all on subsequent civil litigation. Thus, *Brodheim* did not settle the question before us.

B

California's general rule is that "[a] valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action." *Slater v. Blackwood*, 543 P.2d 593, 594 (Cal. 1975). "It is clearly established that a party may not split up a single cause of action and make it the basis of separate suits." *Wulfjen v. Dolton*, 151 P.2d 846, 848 (Cal. 1944).

To support his contention that California exempts denials of habeas petitions from its general rule, Gonzales relies on one line of dicta from an intermediate appellate court: "While a final judgment granting habeas corpus relief is res judicata, an order denying the writ is not." *Younan v. Caruso*, 59 Cal. Rptr. 2d 103, 108 (Ct. App. 1996) (citation omitted). But Gonzales removes the sentence from its context: *Younan* concerned the claim-preclusive effect of a habeas petition on a second or successive habeas petition, not on subsequent civil litigation for damages. Historically, res judicata has not, of its own force, barred such habeas petitions. *See, e.g.*, *In re Perkins*, 2 Cal. 424, 430 (1852) ("[A]ny prisoner may pursue his remedy of *habeas corpus* until he has exhausted the whole judicial power of the State.").

But *Younan* itself notes that "successive habeas petitions based on claims which *could have been adjudicated* in previous petitions are not permitted, except in rare instances

where a fundamental miscarriage of justice has occurred." 59 Cal. Rptr. 2d at 109 (emphasis added) (citing *In re Clark*, 855 P.2d 729 (Cal. 1993)). The exception Gonzales urges does not hold true even as to subsequent habeas petitions. And nothing in *Younan* suggests that it applies to subsequent civil litigation.

California may have a particular "habeas exception" to its general rule of claim preclusion, but it is not the exception Gonzales urges, nor is it relevant here. In *Gomez v. Superior Court*, the California Supreme Court noted that

> the consequences of a summary denial of a writ petition differ in some respects from the consequences of a final judgment in a fully adjudicated case. For example, the denial of an application for an alternative writ or *the summary denial of a habeas corpus petition* does not establish law of the case and *does not have a res judicata effect in future proceedings*.

278 P.3d 1168, 1175 n.6 (Cal. 2012) (emphasis added). By implication, then, *reasoned* denials of California habeas petitions, as in this case, do have claim-preclusive effect.

C

Gonzales offers several reasons why habeas proceedings should not have claim-preclusive effect on subsequent civil litigation, but those arguments are irrelevant to the issue before us, which is not whether, in a general sense, habeas judgments *should* have claim-preclusive effect on subsequent civil litigation, but whether *California* affords claim-

preclusive effect to its habeas judgments. Gonzales cites several out-of-circuit precedents, but they do not concern California's principles of claim preclusion.

For example, in *Rhodes v. Hannigan*, the Tenth Circuit determined under Kansas law that habeas judgments of Kansas courts do not have claim-preclusive effect on subsequent civil litigation. 12 F.3d 989, 991 (10th Cir. 1993). Kansas's doctrine of claim preclusion, however, requires "identity in the things" for which suit is brought. *Id.* Thus, "[s]everal Kansas courts [had] held that a suit for injunctive relief involves a different cause of action than a suit for compensatory damages." *Id.* A habeas petition "seeks the remedy of immediate release or a shortened period of confinement" and a § 1983 suit "requests monetary compensation." *Id.* Therefore, under Kansas law, a habeas petition and a § 1983 suit "involve different causes of action." *Id.*[4]

By contrast, California's doctrine of claim preclusion does not require identity in relief sought. "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory *or for different relief*." *Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 302 (Cal. 2002) (emphasis added) (holding that a judgment granting declaratory relief and decreeing specific performance barred, under claim preclusion, a subsequent suit for damages).

---

[4] Our sister circuit also offered several "policy reasons . . . against precluding a prisoner's § 1983 claim because it was not raised in conjunction with an earlier petition for habeas corpus relief." *Rhodes*, 12 F.3d at 992. We consider those reasons unpersuasive here as they are not grounded in California's doctrine of claim preclusion.

Similarly inapposite is *Burgos v. Hopkins*, which held under New York law that New York's habeas judgments do not preclude subsequent civil litigation for damages. 14 F.3d 787, 790–92 (2d Cir. 1994). New York does not preclude claims where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Id.* at 790. California, however, applies claim preclusion even where the plaintiff initially sued in a court of limited jurisdiction. *See, e.g.*, *Allstate Ins. Co. v. Mel Rapton, Inc.*, 92 Cal. Rptr. 2d 151, 160 (Ct. App. 2000) ("A litigant cannot avoid the impact of the rule against splitting [a] cause[] of action by choosing for his first foray a tribunal of limited jurisdiction." (internal quotation marks omitted; alterations in original)).

Our sister circuits' cases do not suggest that California has a "habeas exception" to its general rule against splitting a cause of action. California applies claim preclusion regardless of whether the relief sought in each action is the same, unlike Kansas, or whether the first court exercised limited jurisdiction, unlike New York. Therefore, we must address whether Gonzales's complaint is claim precluded.

### III

Under California's doctrine of claim preclusion, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." *Mycogen Corp.*, 51 P.3d at 302. As opposed to the federal "transactional" theory of claim preclusion, "California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes." *Brodheim*, 584 F.3d at 1268.

A "'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." *Crowley v. Katleman*, 881 P.2d 1083, 1090 (Cal. 1994). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Eichman v. Fotomat Corp.*, 197 Cal. Rptr. 612, 614 (Ct. App. 1983). "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which *could have been raised*." *Id.* (emphasis added). "[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010).

The parties agree that Gonzales's primary right was his protected liberty interest in remaining free from SHU placement. They also agree that the harm suffered was Gonzales's gang validation and indeterminate SHU detention based on allegedly insufficient or unreliable evidence. Their dispute is in defining the primary duty that CDC allegedly breached.

According to Gonzales, the primary duty of CDC was not to place him in the SHU without affording him established *procedural* protections. CDC describes a duty to provide *due process* before deciding whether to segregate him. The state habeas court understood Gonzales to be asserting a federal due process claim. The more precise description of CDC's

primary duty, therefore, was not to deprive Gonzales of liberty without due process of law.

A

Gonzales contends that his retaliation, First Amendment, and Equal Protection claims are not precluded, even though they all challenge the same actions taken by the same officials at the same time as his previously adjudicated due process claim. They arise under a distinct "primary right," he asserts, because they are inherently substantive rather than procedural claims.

Gonzales's theory that procedural and substantive harms must result in separate causes of action rests not on any California case, but on *Brodheim*. In that case, the prisoner's state court suit "challenged the fairness of having staff complaints against the Appeals Coordinator reviewed by the Appeals Coordinator. He claimed that this effectively deprived him of his statutory and regulatory rights to file a complaint by denying him any meaningful review." *Brodheim*, 584 F.3d at 1268. His federal complaint, on the other hand, "concerned specific acts which he claimed constituted retaliation for the exercise of his constitutional right to file a grievance, namely, the 'warning' message and the subsequent transfer request." *Id.*

We noted that the two harms—"lack of meaningful review, a procedural harm, and a retaliatory chilling of constitutional substantive rights"—were "distinct." *Id.* But our reasoning did not rely simply on a distinction between procedural and substantive harms; we went on to explain how the harms were distinct:

They were caused at different times, by different acts, and by different actors. In the state action, the alleged harm was inflicted by the Warden in 2003, when he allowed Cry to review grievances Brodheim filed against Cry. In Brodheim's federal complaint, on the other hand, the actual alleged harm was inflicted by Cry himself when he placed the handwritten warning on Brodheim's interview request form in 2001.

*Id.* at 1268–69.

Gonzales reads *Brodheim*'s distinction between procedural and substantive harms out of context. Although such a distinction might be helpful in determining whether a plaintiff has multiple causes of action, *Brodheim* does not stand for the proposition that an allegation of a "procedural" harm always involves a different cause of action from an allegation of a "substantive" harm.

Moreover, even if *Brodheim* were to stand for such a proposition, it would not show that Gonzales has alleged different causes of action here. The procedural harm in *Brodheim* was purely procedural. The prisoner alleged that the adjudicator of his complaint was biased because the adjudicator was also the subject of his complaint. By contrast, Gonzales's state habeas petition did not allege a purely procedural harm. The state court evaluated his challenge under the "some evidence" standard developed in *Madrid v. Gomez*, 889 F. Supp. 1146, 1273 (N.D. Cal. 1995). That case makes clear that "some evidence," although mandated by due process, has a substantive component: "*In addition to purely procedural protections,* due process also

requires prison officials to have an evidentiary basis for their decisions to confine an inmate to a security housing unit." *Id.* (emphasis added).

When challenging the same actions by the same group of officials at the same time that resulted in the same harm, Gonzales cannot escape claim preclusion by labeling his state habeas challenge "procedural" and his § 1983 challenge "substantive." *See Boeken*, 230 P.3d at 348.

B

Gonzales maintains that his First Amendment and Equal Protection claims should survive because they challenge the conditions of his confinement, whereas his habeas petition challenged the fact of his confinement.

CDC concedes that a challenge to the conditions of Gonzales's confinement would present a different cause of action than a challenge to the fact of his confinement, but no such distinction is present here. Although Gonzales's brief describes his First Amendment and Equal Protection claims as challenges to "the *conditions* of his current confinement," in truth, his challenge is to the *fact* of his confinement in SHU. As his complaint puts it, for example: "Defendants have violated my rights guaranteed by the First Amendment to the U.S. Constitution in that my confinement in the SHU is based wholly upon my legal and legitimate attempts in jailhouse lawyering activities."

Gonzales challenged the fact of his confinement in the SHU in his state habeas petition. That he seeks a different remedy or asserts a different legal theory in his current

challenge is irrelevant under California's claim preclusion doctrine.

IV

Gonzales's Eighth Amendment challenge to the debriefing process presents a separate cause of action, not precluded by his state habeas petitions. The question is whether he has standing to bring such challenge.

Standing's three elements—injury in fact, causal connection, and redressability—are well known and not at issue here. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Generally speaking, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991).

Because Gonzales had consistently denied being a gang member, the district court concluded that he had "alleged no facts which would suggest that [he] could debrief," and therefore lacked standing to challenge the debriefing policy.

Gonzales's complaint, construed liberally, *see, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012), does not allege that it is impossible for him to debrief, but that it is impossible for him to debrief *successfully*. As an adjudicated gang member, he is eligible to debrief, regardless of whether he is, in fact, a member of Northern Structure. Of course, if his allegations are true, he will not be able to convince prison officials that he has renounced his non-existent gang membership, a requirement to debrief successfully. But the risk of retaliation from other gang members—as alleged in

his complaint—inheres in becoming an "informant," regardless of whether his information is accurate.

Construed liberally, Gonzales's complaint alleges that he would attempt to debrief, which he is eligible to do, but for the risk of retaliation. That is sufficient to establish standing.

V

Gonzales's motion to amend his complaint was conditioned on his original complaint surviving the district court's order to show cause why it should not be dismissed. As that condition precedent was not met, the district court denied the motion. But we have determined that the court erroneously dismissed one count of Gonzales's complaint. Therefore, we reverse the court's denial and remand for reconsideration.

VI

The district court properly concluded that the claim-preclusive effect of California's denial of his habeas petition bars nineteen of Gonzales's twenty counts. The court erred, however, by dismissing Gonzales's Eighth Amendment challenge to the debriefing process for lack of standing. As the condition precedent to Gonzales's motion to amend is now met, we must reverse the court's denial of that motion and remand for reconsideration.[5]

**AFFIRMED in part, REVERSED in part, and REMANDED.** Each party shall bear its own costs on appeal.

---

[5] Gonzales's motion to certify, filed October 22, 2013, is **DENIED** as moot.