Filed 1/24/14  Robinson v. Bank of America CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ADRIENNE ROBINSON, | B246423 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC471549) |
| v. | |
| BANK OF AMERICA, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Reversed.

Adrienne Robinson, in pro. per., for Plaintiff and Appellant.

Bryan Cave, Jed P. White, and Andrea Winternitz for Defendants and Respondents.

_____

Plaintiff Adrienne Robinson appeals from an order of dismissal entered after a demurrer was sustained to the first amended complaint alleging the wrongful foreclosure of her residence. We reverse because plaintiff alleged that she received no notice of the increase in her monthly payments on which the foreclosure was based.

## FACTUAL AND PROCEDURAL SUMMARY

In April 2008, plaintiff signed an adjustable rate note in favor of Countrywide (predecessor to Bank of America) for $405,000, secured by a deed of trust on a condominium in Los Angeles. The deed of trust defines "[e]scrow [i]tems" as including amounts due for taxes and assessments and insurance premiums, which plaintiff was to pay to the lender. The lender was to pay the escrow items directly.

In February 2011, nonjudicial foreclosure proceedings were initiated. The property was sold at public auction in June 2011. Plaintiff sued Bank of America and ReconTrust in October 2011 (collectively defendants). She alleged that she found herself in financial distress in early 2009, although she had not missed any payments on her mortgage. She contacted Bank of America to inquire about her options. In November 2009, Bank of America agreed to modify the loan. It agreed to add the $8,024.19 in delinquent interest and escrow items to the principal balance. The monthly payments for principal and interest were reduced to $1,339.28, and "Escrow/Option Ins." were to be $234.95, for a total new monthly payment of $1,574.23.

Plaintiff takes the position that she avoided any default or arrearage by consistently making every $1,574.23 monthly payment, starting with the February 2010 payment. Defendants argue that exhibits to the complaint and judicially noticed on the demurrer establish that this amount did not include increases in property taxes, which would have brought the monthly amount due to over $1,700.00. The trial court sustained the defendants' demurrer with leave to amend. Plaintiff filed a first amended complaint alleging causes of action for breach of written contract, violation of Business and Professions Code section 17200, and negligent and willful wrongful foreclosure. Defendants again demurred. In support of the demurrer, they asked the court to take

judicial notice of the deed of trust and certified tax records for 2008 and 2009. The court issued a minute order sustaining the demurrer without leave to amend. Although the minute order refers to oral argument on the demurrer, no reporter's transcript has been lodged with this court. The trial court entered an order dismissing the action with prejudice. Plaintiff filed a timely appeal.

## DISCUSSION

### I

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.] We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]" (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81.) "It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. [Citation.] The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action. [Citation.] The plaintiff can make that showing for the first time on appeal. [Citation.]" (*Ibid.*)

In her opening brief, plaintiff requested a mandatory settlement conference on appeal. The Second District Court of Appeal has a district-wide voluntary settlement/mediation program. A party interested in participating in that program is to contact the clerk's office. (Ct. App., Second Dist., Local Rules, Revised Internal Operating Practices and Procedures, Settlement Mediation Program.) The docket in this case does not reflect that plaintiff sought to participate in this program. In the conclusion

3

of her reply brief, plaintiff asks us to issue an award of compensatory and punitive damages on our own authority, without setting a mandatory settlement conference, based on the existing records. This request exceeds the scope of proper appellate review and exceeds the authority of the court.

II

Plaintiff objects to the trial court's reliance on property tax documents which were the subject of a request to take judicial notice in support of defendants' demurrer to the first amended complaint. The documents are Los Angeles County Tax Collector's certified certificates of payment of 2008-2009 and 2009-2010 property taxes on plaintiff's property. Defendants contend the trial court granted this request and plaintiff does not dispute this.

Defendants point out that this objection was not raised in plaintiff's opposition to the demurrer. In addition, she attached 2009-2010 and 2010-2011 certificates of payment of property taxes as exhibits C and D to her first amended complaint. Plaintiff cited these documents in her opposition to the demurrer.

Failure to object to a request for judicial notice in the trial court forfeits the objection on appeal. (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512, fn. 4, citing *Younan v. Caruso* (1996) 51 Cal.App.4th 401, 406, fn. 3.) Plaintiff failed to preserve her objection to judicial notice of the tax records. In any event, judicial notice of the documents was proper. We shall consider these documents in our discussion of the merits of the demurrer under Evidence Code section 459, subdivision (c) as official records of the county, a state entity for the purposes of judicial notice. (*Marek v. Napa Community Development Agency* (1988) 46 Cal.3d 1070, 1076, fn. 5, 1086.)

Similarly, plaintiff argues the trial court erred by taking judicial notice of the truth of statements contained within court records in its order sustaining the demurrer, but does not identify the records at issue. She claims she had a right to be heard on the propriety of any request for judicial notice. This objection too, was not raised in the trial court and

4

this issue is forfeited.  (*Shuster v. BAC Home Loans Servicing, LP*, *supra*, 211 Cal.App.4th at p. 512, fn. 4.)

For the first time on appeal, plaintiff claims the trial court committed federal constitutional error by overruling all Evidence Code section 352 objections.  No such objection was made in plaintiff's written opposition to the demurrer.  Since plaintiff has not supplied the reporter's transcript of the hearing on the demurrer, we are unable to assess whether an oral objection was raised and erroneously denied at that hearing.  (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1211.)  The issue was not preserved for appeal.

III

Relying on the property tax records attached to the first amended complaint which we judicially notice, defendants argue that foreclosure was proper because plaintiff failed to pay the full property taxes due in 2009-2011.  They contend that Bank of America paid the taxes directly, but that plaintiff's monthly payments under the modification were not sufficient to cover those amounts plus principal and interest due.  Plaintiff's position is that defendants did not notify her of any increase in her modified monthly payments and therefore the foreclosure was improper.

Plaintiff alleged that she and Bank of America entered into a written agreement to modify her loan.  Two documents are essential to understanding the terms of the modification agreed upon by plaintiff and Bank of America.  Each is attached as an exhibit to the first amended complaint.  The first is a letter from the Bank of America Home Retention Division dated November 23, 2009 enclosing a proposed agreement to modify plaintiff's loan.  (We refer to this as the modification notification.)  Plaintiff was advised that for the modification to become effective, she had to satisfy specific requirements in a section titled "'To Accept the Proposed Modification'" section of the letter by a set deadline.  The first item on this list states that the modification notification outlines important legal terms and notices of changes.

5

The modification notification provided a breakdown of plaintiff's modified monthly payments: "P&I Payment" of $1,339.28; "Escrow/Option Ins." of $234.95; "New Monthly Payment" total of $1,574.23. Footnote 4 to the monthly total stated: "Your first new monthly payment is due with the executed agreement. This payment is subject to change if your escrow payment changes. Escrow includes amounts to pay taxes and insurance on your home."

The second document is the loan modification agreement itself. It stated that the principal and interest payments during this period would be $1,339.28 beginning February 1, 2010 to February 1, 2015, the same figure given in the modification notification. Paragraph 4 of the modification agreement says that borrower "also will comply with all other . . . requirements" including making all payments of taxes, insurance premiums and other payments the borrower is obligated to make under the security instrument.

The trial court took judicial notice of a certificate of payment from the Los Angeles County tax collector for 2008 to April 2009, the period before the loan was modified. Those taxes totaled $2,819.40 a year, or $234.95 per month, the precise figure stated for escrow items in the modification notification. The property taxes paid in the next two years were higher according to the documents attached to the complaint. Exhibits C and D to the first amended complaint show that the actual property tax payments made on the property in 2009-2010 were $416.94 per month and in 2010-2011, went down to $387.27 a month. Both figures are higher than the figure of $234.95 per month for escrow amounts specified in the modification notification.[1] These increases are the basis for the defendants' claim that they established plaintiff's default in their demurrer.

The first amended complaint alleged that plaintiff made all payments due under the modification agreement. Significantly, she also alleged that Bank of America never

---

[1] The documents contradict plaintiff's allegation that her taxes went down during the 2009 to 2011 period. In such circumstances, the facts in the exhibits take precedence. (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282.)

6

informed her that the property taxes had increased, requiring a higher modified payment. Exhibits to the first amended complaint demonstrate that plaintiff continued to pay the original amount of $1,574.23 through February 2011. There is nothing in the record before us that establishes plaintiff was informed by defendants that her monthly payments had increased because of the change in property taxes. Her allegation that she received no notice of the increased taxes was not contradicted by any of the documents subject to judicial notice. For purposes of discussion, we therefore must take it as true. (*Siliga v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 219 Cal.App.4th at p. 81.)

Since plaintiff alleges that she was not informed that her modified mortgage payments had increased, and that she made all payments due, plaintiff has properly alleged a cause of action for breach of the modification agreement. The trial court erred in sustaining the demurrer on the ground that a lawful exercise of the right to nonjudicial foreclosure had been demonstrated on the face of the pleadings and judicially noticed documents.


IV

Plaintiff also alleged causes of action for negligent and intentional wrongful foreclosure, based on the same alleged conduct. She alleged that defendants had "various statutory duties" to conduct themselves in strict compliance with all statutory provisions regulating their conduct, as well as common law duties to treat her fairly and avoid injuring her. No specific statute was cited. She alleged the defendants negligently and intentionally breached these duties by failing to follow statutory requirements in initiating foreclosure, including:

1) registering the notice of default when plaintiff was not in default;

2) proceeding to foreclosure when she was not in default;

3) refusing to stop the foreclosure process despite repeated requests and knowledge that they had not met their duties, and that plaintiff was not in default.

As we have concluded, plaintiff has adequately alleged that she was not in default because she did not receive any notice of an increase in her monthly payments to cover

7

increased property taxes assessed on the property in 2009-2011. In light of this conclusion, plaintiff has adequately alleged these grounds for wrongful foreclosure, each of which is based on the assumption that she was not in default when foreclosure was initiated and the property eventually sold.

In her briefs on appeal, plaintiff cites specific federal HUD regulations requiring face-to-face meetings before foreclosure is initiated. She sought leave to amend in the conclusion of her opposition to the demurrer. Code of Civil Procedure section 472c, subdivision (c) provides that a request for leave to amend may be made for the first time on appeal. On remand, plaintiff may request leave to amend to add these allegations.

V

The first amended complaint also alleged a cause of action for unfair, unlawful, and fraudulent business practices in violation of Business and Professions Code section 17200. Plaintiff alleged that the conduct of defendants was unfair, unlawful and fraudulent and likely to deceive reasonable consumers. She alleged various enforcement actions brought against Bank of America and other lenders based on these practices, and that Bank of America had signed consent orders agreeing to cease and desist from these practices. Plaintiff identified the following practices as the basis for this cause of action: 1) proceeding with foreclosure against borrowers who are in active loan modification review; 2) placing borrowers into trial plans with false promises of permanent modifications; and 3) keeping borrowers in loan modification review for extended periods without making a good faith effort to come to a decision.

None of these practices applies to plaintiff, who was not left in limbo during an unsuccessful attempt to modify her loan. Instead, she alleged, and the modification agreement establishes, that she had a binding agreement to modify the terms of her loan.

"'The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."' (*Kwikset Corp. v. Superior Court* (2011)

8

51 Cal.4th 310, 320.) In 2004, the electorate 'materially curtailed the universe of those who may enforce' UCL provisions. [(*Ibid.*)] The UCL was amended to confine standing to those actually injured by a defendant's business practices. ([*Id.*] at p. 321.) As amended, the UCL provides that an individual may not prosecute a UCL claim unless the individual 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' (§ 17204.)" (*Schwartz v. Provident Life & Accident Ins. Co.* (2013) 216 Cal.App.4th 607, 611.) In *Schwartz*, the court concluded that the plaintiff could not meet the standing requirement because he had not been injured by the alleged wrongful denial of disability insurance benefits to *other* policy holders. (*Id.* at pp. 611-612.) Similarly, here, plaintiff cannot demonstrate that she was harmed by practices which did not apply to her situation.

Plaintiff also alleged that defendants have a pattern and practice of inducing homeowners like her into entering into modification agreements "with the intent of 'grabbing' as much cash as possible and then foreclosing on borrowers, like Plaintiff" even though they are current or not otherwise in default. She also alleged that defendants intended to foreclose on her the entire time and manufactured a reason to do so (that the February 2011 payment was not made with certified funds). Both these allegations are based on the premise that foreclosure was wrongful because plaintiff was not in default. We have concluded that plaintiff has adequately alleged a basis for relief on the theory that she was not in default at the time of the foreclosure based on the documents cognizable on review of the demurrer. The trial court erred in sustaining the demurrer to this theory of plaintiff's claim for violations of Business and Professions Code section 17200.

VI

Plaintiff cites Civil Code section 2923.5 in her opening brief and argues that Bank of America did not comply with the requirements of this statute. "In *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 213-214, this court held: 'Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender contact the borrower in

9

person or by phone to "assess" the borrower's financial situation and "explore" options to prevent foreclosure.'  The only remedy afforded by section 2923.5 is, however, a one-time postponement of the foreclosure sale before it happens.  (*Mabry v. Superior Court, supra,* at pp. 214, 225, 235.)"  (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 77 (*Lueras*).)  In *Lueras*, the plaintiff did not seek postponement of the foreclosure sale and alleged the sale had been conducted.  For that reason, the court concluded that the plaintiff could not state a cause of action for violation of Civil Code section 2923.5 as a matter of law.  (*Ibid.*)

Here, like the plaintiff in *Lueras*, plaintiff alleges that the foreclosure sale had been conducted and therefore she did not seek its postponement.  Under the reasoning of *Lueras, supra*, 221 Cal.App.4th at page 77, she cannot now state a cause of action under Civil Code section 2923.5.

Plaintiff also cites Civil Code section 2923.1, subdivision (a)[2] in her briefs for the proposition that a mortgage broker is a fiduciary of the borrower and that any violation of the fiduciary duty shall be a violation of the mortgage lender's license law.  The definition of "mortgage broker" under the statute includes "a commercial or industrial bank organized under the Banking Law."  (Civ. Code, § 2923.1, subd. (b)(1) & (2).)  "'Mortgage brokerage services' means arranging or attempting to arrange, as exclusive agent for the borrower or as dual agent for the borrower and lender, for compensation or in expectation of compensation, paid directly or indirectly, a residential mortgage loan made by an *unaffiliated third party*."  (Civ. Code, § 2923.1, subd. (b)(3), italics added.)

Under the facts alleged in the first amended complaint, the statute does not apply because there was no residential mortgage loan made by an unaffiliated third party.

---

[2] Civil Code section 2923.1, subdivision (a) states in pertinent part:  "A mortgage broker providing mortgage brokerage services to a borrower is the fiduciary of the borrower, and any violation of the broker's fiduciary duties shall be a violation of the mortgage broker's license law.  This fiduciary duty includes a requirement that the mortgage broker place the economic interest of the borrower ahead of his or her own economic interest."

10

## VII

Plaintiff also raises several claims of ineffective assistance of her trial counsel. She contends that she wanted to provide testimony regarding defendants' failure to comply with federal regulations requiring a face-to-face meeting before it initiates nonjudicial foreclosure. She also argues that she would have had an opportunity to present overwhelming evidence at trial if her counsel had been competent in opposing the demurrer.

"'[T]he general rule is that there is no due process right to counsel in civil cases. [Citation.] Generally speaking, the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.' (*Walker v. State Bar* (1989) 49 Cal.3d 1107, 1116.) Thus, in *Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, the Court of Appeal concluded that as the appellant [in that case had] selected his own private counsel to represent him in a civil case involving punitive damages, he was not entitled to a retrial on the ground his counsel was ineffective. (*Id.* at p. 980.)" (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1574-1575 [finding ineffective assistance of counsel arguments moot because there is no right to counsel in dissolution proceedings]; see also *In re Grunau* (2008) 169 Cal.App.4th 997, 1003 [in civil case, attorney negligence remediable by malpractice action, "may be better to relegate the aggrieved litigant to that remedy than to impair the finality of appellate judgments on the ground of counsel's deficient performance"].)

We also note that some of plaintiff's claims of ineffective assistance relate to the failure of her attorney to secure her an opportunity to testify about the grounds for the action. Review of a ruling on a demurrer is confined to the allegations on the face of the pleadings and facts properly subject to judicial notice. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1487, fn. 3.) Oral testimony would not have been appropriate at this hearing.

11

VIII

Plaintiff cites a number of rules and legal principles which have no application in her state civil action.

A. *Federal Rules of Evidence*

Plaintiff cites Federal Rules of Evidence 102, 201, 401, 403, 405, 406, 603, 608, and 609. These rules have no application in this civil action brought in California state court. California court proceedings are governed by the California Evidence Code. (Evid. Code, § 300.)

B. *Federal Cases on Reversible Error*

Plaintiff cites federal criminal cases regarding reversible error, for example, *Arizona v. Fulminante* (1991) 499 U.S. 279 and *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, and many others. These federal criminal cases have no application to this case.

C. *Federal Criminal Due Process Cases*

Plaintiff cites federal criminal cases for the proposition that erroneous admission of irrelevant and prejudicial evidence may constitute a due process violation. She also cites federal criminal cases considering whether prosecutorial misconduct is so egregious that it constitutes a deprivation of due process. These cases do not apply here.

D. *California Criminal Cases*

Plaintiff cites a number of California criminal cases regarding various issues including the right of a criminal defendant to have a jury determine every material issue, including affirmative defenses, the right to instructions on issues presented by the evidence, and standards of reversible error. These criminal cases do not apply here.

E. *Penal Code section 1151.5*

In the conclusion of her opening brief, plaintiff cites Penal Code section 1151.5 in support of an argument that sale of the property could not be perfected. There is no Penal Code section 1151.5, nor does that section number appear in the Civil Code. We are unable to address this argument under these circumstances.

12

**DISPOSITION**

The order of dismissal is reversed.  Plaintiff is to have her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

SUZUKAWA, J.

13