**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROSE COURT, LLC, | No. 21-16663 |
| *Plaintiff-Appellant*, | D.C. No. 3:20-cv-06213-JD |
| v. | |
| SELECT PORTFOLIO SERVICING, INC.; QUALITY LOAN SERVICE CORPORATION; U.S. BANK, N.A., successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-HY7, its assignees and/or successors, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted December 7, 2023
San Francisco, California

Filed October 17, 2024

Before:  Daniel P. Collins, Danielle J. Forrest, and Jennifer Sung, Circuit Judges.

Opinion by Judge Forrest;
Concurrence by Judge Collins

## SUMMARY[*]

### Bankruptcy

The panel affirmed the district court's order affirming the bankruptcy court's dismissal without leave for further amendment of debtor Rose Court, LLC's complaint in an adversary proceeding seeking declaratory relief based on Quality Loan Service Corporation's alleged fraudulent transfer to U.S. Bank, N.A., of a property for which Select Portfolio Servicing, Inc., was the loan servicer.

Rose Court's predecessor in interest had defaulted on the mortgage loan secured by the real property, and Rose Court had filed and voluntarily dismissed multiple lawsuits in state and federal court challenging the lender's efforts to foreclose the property and collect on the loan. In the adversary proceeding, Rose Court sought to amend its complaint a second time to assert a fraud-based wrongful-foreclosure claim premised on the theory that defendants were enforcing a fabricated promissory note. The panel held that the bankruptcy court properly denied the motion to amend as futile under Federal Rule of Civil Procedure 41(a)(1)(B)'s

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

two-dismissal rule because Rose Court had previously asserted and voluntarily dismissed the claims in its proposed second amended complaint in the prior civil actions.

There are four requirements that must be met to trigger the two-dismissal rule: (1) the plaintiff voluntarily dismissed an action in either state or federal court, (2) thereafter the plaintiff voluntarily dismissed an action pending in federal court, (3) the two dismissals concerned the same claim, and (4) the plaintiff seeks to raise the twice-dismissed claim again in federal court. Following other circuits, and analogizing to the doctrine of res judicata, the panel adopted a transactional approach and held that a subsequent claim is the same as a previously dismissed claim if it arises from the same set of facts as the first action and the claim could have been or was raised in the preceding action. The panel held that, under this standard, Rose Court's proposed claim was the same claim that it had twice dismissed in the prior actions, and the two-dismissal rule barred it from asserting this same claim for a third time against the defendants in the adversary proceeding.

The panel declined to address, for the first time on appeal, Rose Court's argument that it should be allowed to amend to assert a new wrongful-foreclosure claim.

Concurring in part and concurring in the judgment, Judge Collins wrote that he concurred in Section III(B) of the court's opinion, declining to consider a new claim raised by Rose Court for the first time on appeal. Judge Collins also agreed with the court's conclusion, in Section III(A) of its opinion, that the bankruptcy court properly denied Rose Court's request for leave to amend its adversary complaint to assert a claim for "wrongful foreclosure," but his reasoning on that score differed somewhat from the

majority's.  Judge Collins wrote that, rather than applying the "same transaction approach" that generally governs under federal preclusion law, the scope of the "claim" at issue in the dismissed federal and state court suits should be governed by California's preclusion principles.

**COUNSEL**

Stephen F. Lopez (argued), Stephen F. Lopez APC, Corona, California, for Plaintiff-Appellant.

Douglas C. Straus (argued) and Tiffany F. Ng, Buchalter A Professional Corporation, San Francisco, California; Sunny S. Sarkis, Schneider Wallace Cottrell Konecky LLP, Emeryville, California; Melissa R. Coutts, McCarthy & Holthus LLP, San Diego, California; for Defendants-Appellees.

**OPINION**

FORREST, Circuit Judge:

Over a decade ago, Plaintiff-Appellant Rose Court, LLC's (Rose Court) predecessor in interest defaulted on a mortgage loan secured by real property in Monte Sereno, California. Since then, Rose Court has filed and voluntarily dismissed multiple lawsuits pending in state and federal court challenging the lender's efforts to foreclose the property and collect on the loan. After completion of the foreclosure sale, Rose Court filed this adversary proceeding in bankruptcy court against Defendants-Appellees U.S. Bank, N.A. (U.S. Bank); Select Portfolio Servicing, Inc. (SPS); and Quality Loan Service Corporation (Quality) (collectively, Defendants). After dismissing Rose Court's claims, the bankruptcy court denied Rose Court's motion for leave to amend to assert a fraud-based wrongful-foreclosure claim, concluding that this claim was barred by Federal Rule of Civil Procedure 41(a)(1)(B)'s two-dismissal rule. On appeal, Rose Court challenges only the district court's denial of leave to amend. Because the bankruptcy court correctly applied the two-dismissal rule, we affirm.

## I.   BACKGROUND

### A.  Rose Court's Default and Foreclosure Challenges

In 2007, Teri Nguyen obtained a refinance loan from Washington Mutual Bank, FA (WaMu) secured by real property located in Monte Sereno, California (the Property). Nguyen executed a promissory note and deed of trust in favor of WaMu, which named California Reconveyance Company (CRC) as trustee.

After Nguyen defaulted on the loan payments, CRC recorded a notice of default in 2009. Nguyen then transferred the Property from her sole ownership to joint ownership with her husband, and together the Nguyens transferred the Property to Rose Court, a limited liability company in which they are managing members.

WaMu ultimately failed, and there were multiple assignments of the loan: JPMorgan Chase Bank, N.A. (Chase Bank) acquired the loan from WaMu, and assigned it to Bank of America, N.A., which assigned it to U.S. Bank, the current note holder and beneficiary. Thereafter, SPS became the loan servicer, and U.S. Bank substituted Quality as the new trustee under the deed of trust.

Quality first initiated nonjudicial foreclosure proceedings against the Property in mid-2017 by recording a notice of sale. But its attempts to complete the foreclosure were thwarted by years of litigation initiated by Rose Court and Nguyen (collectively, Rose Court). Following the notice of sale, Rose Court sued SPS and Quality in Santa Clara County Superior Court. Among other things, it alleged that Chase Bank never acquired the promissory note, therefore, the subsequent transfers were invalid, and U.S. Bank did not own the loan. Rose Court sought a declaration that the deed of trust had been eliminated, but less than a year later, it voluntarily dismissed the Santa Clara County action.

In 2019, Rose Court filed a second lawsuit against the three Defendants named in this case in San Francisco County Superior Court, again claiming that the loan was not properly assigned and that "Defendants have been passing off fabrications as the original note." Rose Court sought a declaration that Defendants had no authority to foreclose the Property. Defendants removed this case to federal district

court, and thereafter Rose Court again voluntarily dismissed its lawsuit under Federal Rule of Civil Procedure 41(a).

Before the removed San Francisco County action was dismissed, Rose Court filed a third action in Santa Clara County Superior Court, again against all three Defendants. The complaint in this action alleged that Quality illegally sold the Property to U.S. Bank in a nonjudicial foreclosure sale after SPS refused to accept Rose Court's loan payments while the parties worked on a loan modification. Rose Court once again voluntarily dismissed this third action a month after filing it.

### B. Rose Court's Bankruptcy Proceedings

While its various civil actions were ongoing, Rose Court filed for bankruptcy in October 2017. The bankruptcy court granted U.S. Bank relief from the automatic stay as to the Property and ordered the relief effective for two years in any bankruptcy proceeding so long as the order was properly recorded. U.S. Bank recorded the order granting relief from the stay shortly after it was issued. Quality then scheduled a nonjudicial foreclosure sale of the Property for November 25, 2019. Two days before the sale, Rose Court filed another bankruptcy petition. Quality nevertheless proceeded with the sale and sold the Property to U.S. Bank because the Property was exempt from the automatic stay under the bankruptcy court's prior order.

Shortly after the foreclosure sale, Rose Court filed this adversary action, alleging that Defendants improperly recorded the bankruptcy court's relief-from-stay order and that the Property was subject to the automatic stay triggered by Rose Court's second bankruptcy action at the time of the foreclosure sale. The bankruptcy court granted Defendants'

motion to dismiss but allowed Rose Court the opportunity to amend.

Rose Court filed its operative First Amended Complaint in March 2020, requesting declaratory relief based on Quality fraudulently transferring the Property to U.S. Bank after the auctioneer postponed the foreclosure sale. Defendants again moved to dismiss. Rose Court then moved for leave to amend a second time so that it could assert a fraud-based wrongful-foreclosure claim premised on the theory that Defendants were enforcing a fabricated promissory note. The bankruptcy court granted Defendants' second motion to dismiss because the foreclosure sale transcript contradicted Rose Court's allegations that the auctioneer postponed the sale. The court also denied Rose Court's motion to amend as futile under Federal Rule of Civil Procedure 41(a)(1)(B) because Rose Court previously asserted and voluntarily dismissed the claims in its proposed Second Amended Complaint in the above-described civil actions.

Rose Court appealed to the district court, which affirmed the bankruptcy court. Rose Court then timely appealed to this court, challenging only the bankruptcy court's refusal to allow further amendment. We have jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291.

## II.  STANDARD OF REVIEW

"We review de novo a district court's decision on appeal from a bankruptcy court." *Ad Hoc Comm. of Holders of Trade Claims v. Pac. Gas & Elec. Co.* (*In re PG&E Corp.*), 46 F.4th 1047, 1052 (9th Cir. 2022). We generally "review the denial of leave to amend for an abuse of discretion, but we review the futility of amendment de novo." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021);

*see also Turner v. Wells Fargo Bank NA* (*In re Turner*), 859 F.3d 1145, 1148 (9th Cir. 2017). Dismissal without leave to amend based on futility is appropriate when the proposed amendment would not save the plaintiff's complaint. *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015).

## III.   DISCUSSION

Rose Court challenges the bankruptcy court's refusal to allow further amendment on two grounds. First, Rose Court contends that its prior voluntary dismissals do not trigger Rule 41's two-dismissal rule. Second, Rose Court argues for the first time that it should be allowed to amend to assert a new wrongful-foreclosure claim based on allegations that Defendants interfered with Rose Court's right to reinstate its defaulted loan by tendering the contractual reinstatement amount. We address each argument in turn.

### A.   Fraud Theory

The bankruptcy court denied Rose Court's motion for leave to amend to assert a fraud-based wrongful-foreclosure claim under Rule 41(a)(1)(B)'s two-dismissal rule because Rose Court voluntarily dismissed prior fraud-based wrongful-foreclosure claims that it had asserted in state and federal actions.[1]

Generally, a plaintiff's voluntary dismissal of its case is "without prejudice." Fed. R. Civ. P. 41(a)(1)(B). The two-dismissal rule creates an exception: "[I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal

---

[1] Federal Rule of Bankruptcy Procedure 7041 makes Rule 41 applicable in adversary proceedings.

operates as an adjudication on the merits." *Id.* There are four requirements that must be met to trigger the two-dismissal rule: (1) the plaintiff voluntarily dismissed an action in either state or federal court, (2) thereafter the plaintiff voluntarily dismissed a second action pending in *federal* court, (3) the two dismissals concerned the same claim, and (4) the plaintiff seeks to raise the twice-dismissed claim again in federal court. *Id.*; *see Com. Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th Cir. 1999) ("[W]hether the second voluntary dismissal is subject to the two dismissal rule . . . is an issue that becomes ripe (and can be determined) only in a third action, if and when one is filed."). The two-dismissal rule was adopted to "limit a plaintiff's ability to dismiss an action" and "curb abuses" of "liberal state and federal procedural rules [that] often allowed dismissals or nonsuits as a matter of right until the entry of the verdict." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990).

### 1. "Same Claim"

Neither the Supreme Court nor this court has addressed what "the same claim" means for purposes of the two-dismissal rule. Fed. R. Civ. P. 41(a)(1)(B). However, some of our sister circuits have interpreted this phrase and concluded that claims are the same for relevant purposes if they arise out of the same transaction or occurrence. *See, e.g.*, *Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 50 (2d Cir. 2020) (analogizing the two-dismissal rule to the doctrine of res judicata and holding that a subsequent claim is the same if "it arises from the same transaction or occurrence as the first action"); *Brown v. Hartshorne Pub. Sch. Dist. # 1*, 926 F.2d 959, 961 (10th Cir. 1991) (concluding that the two-dismissal rule was inapplicable where the first two dismissals involved claims of

discrimination occurring in 1979 and the present action alleged discrimination occurring between 1984 and 1986).

We have previously suggested that the two-dismissal rule is analogous to the res judicata inquiry. *See, e.g.*, *Com. Space Mgmt. Co.*, 193 F.3d at 1080 (concluding that "[l]ike determinations of res judicata," determining "the effect of prior dismissals under the two dismissal rule" is properly deferred until a third action is filed); *Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 728 (9th Cir. 1991) (analyzing when a subsidiary "may invoke the two dismissals of the subsidiary's parent and claim Rule 41(a)(1) res judicata"); *see also Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 47 (4th Cir. 1990) ("Because a notice of a second dismissal by the plaintiff serves as an 'adjudication upon the merits,' the doctrine of *res judicata* applies." (footnote and citation omitted)). Res judicata "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action" and applies whenever the claims raised in both actions are the same. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). In this context, the key question in determining whether the claims are the same "is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Id.* at 714 (quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)). That is, we use a transactional test for res judicata. And like our sister circuits, we now adopt this same transactional approach for purposes of the two-dismissal rule and hold that a subsequent claim is the same as a previously dismissed claim if it arises from the same set of facts as the first action and the claim could have been or was raised in the preceding

action. *See Jian Yang Lin*, 950 F.3d at 50; *Brown*, 926 F.2d at 961.

We disagree with our concurring colleague that state law should govern what constitutes the "same claim" for purposes of the two-dismissal rule in diversity actions. At issue in *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), was whether a federal court's dismissal "on the merits and with prejudice" based on a California statute of limitations precluded a Maryland state court from later considering the same claims, which were not time-barred under Maryland law. *Id.* at 499–500. The Supreme Court reversed the Maryland court's dismissal of the refiled claims based on res judicata, explaining that the federal court's dismissal "with prejudice" meant that the claims could not be refiled in the same federal court, not that *all* courts were necessarily precluded from hearing these claims. *Id.* at 506–07, 509. In that context, the Court held as a matter of federal common law that the preclusive effect of a federal judgment entered in a diversity case is governed by "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* at 508. But the Court further explained that this rule does not apply where "state law is incompatible with federal interests." *Id.* at 509. Because the dismissal under the state statute of limitations did not implicate any federal interests, the Court did not further develop this issue.

Here, we are determining the preclusive effect of a dismissal that occurred under operation of a *federal* procedural rule that Rose Court voluntarily engaged. And as noted above, Rule 41(a)(1)'s two-dismissal rule implicates federal interests—it limits a plaintiff's right to repeatedly dismiss the same claims to the detriment of the defendant and the court's docket. *See, e.g.*, *ASX Inv. Corp. v. Newton*,

183 F.3d 1265, 1268 (11th Cir. 1999) ("[T]he primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading.") (quoting *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir. 1976)); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2368 (4th ed. 2023) ("This two dismissal rule . . . was intended to prevent delays, costs, and harassment caused by plaintiffs securing numerous dismissals without prejudice."). Moreover, as in *Smith v. Bayer Corp.*, the applicable "federal and state principles of preclusion law" in this case do not "differ in any relevant respect." 564 U.S. 299, 307 n.6 (2011). Indeed, the concurrence concludes that the outcome on this issue is the same under both federal and state law. "We therefore need not decide whether, in general, federal common law ought to incorporate state law in situations such as this." *Id.* Thus, in line with the Court's approach in *Smith*, we apply federal law in determining whether this action and the previously dismissed federal action involve the same claims.

## 2. Rose Court's Claim

Turning to this case, the prior proceedings relevant to our two-dismissal rule analysis are Rose Court's first Santa Clara County action that it voluntarily dismissed in 2018, and its subsequent San Francisco County action that was removed to federal court and then voluntarily dismissed in 2020. In the first Santa Clara County action, Rose Court sued SPS and Quality, asserting that the transfers of Rose Court's promissory note were invalid and that U.S. Bank did not own the note. After voluntarily dismissing that case, Rose Court sued all three Defendants in San Francisco County. Rose Court's complaint in the San Francisco County action

alleged that neither U.S. Bank nor its predecessors in interest acquired the original note and that Defendants were attempting to foreclose the Property based on a fabricated note. Defendants removed that case to federal district court, where Rose Court filed a notice of voluntary dismissal.

Rose Court's dismissal of its first Santa Clara County action followed by its dismissal of the subsequently removed San Francisco County action falls squarely within the two-dismissal rule. In each case, Rose Court claimed that the original promissory note was never transferred, U.S. Bank did not own Rose Court's note, and, as a result, Defendants lacked the authority to foreclose on the Property. That is, both actions arose from the same facts and raised the same claim. And here, Rose Court again seeks to assert a wrongful-foreclosure claim challenging Defendants' authority to foreclose based on its assertion that U.S. Bank does not own the note. Because Rose Court sought leave to amend to assert the same claim that it has twice dismissed as against SPS and Quality—once in state court and a second time in federal court—the two-dismissal rule bars Rose Court from asserting this same claim for a third time against these defendants.

U.S. Bank was not named as a defendant in the Santa Clara County action, only the removed San Francisco County action. Nonetheless, the two-dismissal rule bars Rose Court's repeat fraud-based claim against this defendant as well. Generally, only defendants named as a party in the prior two dismissed actions may invoke the two-dismissal rule. *See* 9 Wright & Miller, *supra*, § 2368. But the rule applies even to a defendant who was not previously named if that defendant is "substantially the same as the defendant dismissed." *Lake at Las Vegas Invs. Grp., Inc.*, 933 F.2d at 728 (internal quotation marks omitted).

Here, U.S. Bank is the note holder entitled to performance of the loan obligation; SPS is the loan servicing agent, authorized to collect payments on U.S. Bank's behalf; and Quality is the trustee with authority under the deed of trust to foreclose the Property on behalf of the note holder upon default. In the first Santa Clara County action, Rose Court claimed that U.S. Bank was not the true note holder, and it challenged the validity of the deed of trust. SPS and U.S. Bank are closely connected based on their agency relationship with respect to the loan, and the allegations against SPS implicated U.S. Bank's interests. *Cf. id.* (applying the two-dismissal rule to bar claims against entities closely related to the twice-dismissed parent corporation because a risk of harassment to the parent existed even if it was not a party in the lawsuit). Thus, even though U.S. Bank was not expressly named as a defendant in the Santa Clara County action, the two-dismissal rule applies as to Rose Court's new proposed claim as asserted against U.S. Bank because U.S. Bank was "substantially the same" as SPS in the context of the Santa Clara County action. *Id.*

For these reasons, we conclude that Rose Court's proposed fraud-based wrongful-foreclosure claim is barred against each of the named defendants in this case.

## B. Reinstatement Theory

For the first time on appeal, Rose Court contends that it is entitled to amend because it can state a claim for wrongful foreclosure based on Defendants' interference with its right to tender payment and reinstate the loan before the foreclosure sale. Generally, we "will not consider arguments raised for the first time on appeal, although we have discretion to do so." *El Paso v. Am. W. Airlines, Inc.* (*In re*

*Am. W. Airlines, Inc.*), 217 F.3d 1161, 1165 (9th Cir. 2000); *see also Ohel Rachel Synagogue v. United States*, 482 F.3d 1058, 1060 n.4 (9th Cir. 2007). We typically exercise our discretion to consider newly-raised issues in the following three circumstances: "(1) in the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in the law, and, (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) (internal quotation marks omitted) (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

Rose Court concedes that it has not previously raised its reinstatement theory, meaning that no lower court has had an opportunity to consider this argument. This case does not fit within any of the circumstances warranting that we exercise our discretion to consider this issue in the first instance. Rose Court does not point to any exceptional circumstances that prevented it from raising its reinstatement allegations earlier. Indeed, the facts supporting its claim occurred before Rose Court filed its adversary proceeding. Rose Court likewise has not identified any relevant change in the law, and whether Rose Court should be permitted to amend its complaint for a second time is not a purely legal issue but a discretionary one. We therefore decline to consider Rose Court's newly raised theory.

**AFFIRMED.**

COLLINS, Circuit Judge, concurring in part and concurring in the judgment:

I concur in Section III(B) of the court's opinion, which declines to consider a new claim raised by Plaintiff Rose Court, LLC ("Rose Court") for the first time on appeal.  I also agree with the court's conclusion, in Section III(A) of its opinion, that the bankruptcy court properly denied Rose Court's request for leave to amend its adversary complaint to assert a claim for "wrongful foreclosure" against Defendants U.S. Bank N.A. ("U.S. Bank"); Select Portfolio Servicing, Inc. ("Select Portfolio"); and Quality Loan Service Corp. ("Quality Loan").  But because my reasoning on that score differs somewhat from the majority's, I concur only in the judgment.

## I

In July 2017, Rose Court and Teri Nguyen sued Select Portfolio and Quality Loan in Santa Clara County Superior Court, alleging, *inter alia*, a claim for "wrongful foreclosure," based on the contention that the relevant "Note and Deed of Trust were never properly transferred"; that Defendants' various documents relying upon a purported transfer, including an assignment of the deed of trust and a notice of default, were invalid; and that the ongoing attempts to foreclose were wrongful.  This action (the "first Santa Clara action") was voluntarily dismissed without prejudice on February 21, 2018.

In October 2019, Rose Court and Teri Nguyen sued Select Portfolio, Quality Loan, and U.S. Bank in San Francisco County Superior Court, and this action was removed to federal court based on diversity jurisdiction.  This removed action (the "federal action") also alleged that

the relevant note and deed of trust had never been properly transferred and that Defendants' efforts to foreclose were therefore wrongful. This complaint added the allegation that "Defendants have been passing off fabrications as the original note." The complaint sought declaratory and injunctive relief to stop any foreclosure.

While this federal action was still pending, Rose Court and Teri Nguyen filed a third suit in November 2019, this time in Santa Clara County Superior Court, against Select Portfolio, Quality Loan, and U.S. Bank. This suit again alleged that Defendants "could not properly prove" that they had rights derived from the original note and deed of trust; that Select Portfolio and U.S. Bank had relied on "forged" documents in claiming such rights; and that, the day before this third suit was filed, the property had been wrongly foreclosed upon. This suit (the "second Santa Clara action") was voluntarily dismissed without prejudice in December 2019.

Thereafter, in January 2020, the federal suit was voluntarily dismissed "without prejudice" under Federal Rule of Civil Procedure 41(a).

In April 2020, Rose Court, in its bankruptcy proceedings, sought to amend its adversary complaint against Select Portfolio, Quality Loan, and U.S. Bank to assert a "wrongful foreclosure" claim. This claim also alleged that Defendants had not properly acquired an interest in the note and deed of trust; that Select Portfolio and U.S. Bank had been relying on fraudulent documents; and that the foreclosure had been wrongful. The bankruptcy court concluded that this claim was "asserted in the *three* lawsuits that [Rose Court] voluntarily dismissed"; that "these *two* voluntary dismissals operate as an adjudication on the

merits" of that claim under Federal Rule of Civil Procedure 41(a)(1)(B); and that the claim was therefore barred (emphasis added).  The bankruptcy court did not specify which of the "three" dismissals it believed constituted the "two" dismissals that triggered Rule 41(a)(1)(B).

The district court affirmed the bankruptcy court's ruling, concluding that the December 2019 dismissal of the second Santa Clara action and the January 2020 dismissal of the federal action triggered Rule 41(a)(1)(B).

## II

The first question here is whether the January 2020 voluntary dismissal of the federal action "without prejudice" under Rule 41(a) should be deemed, under the proviso in Rule 41(a)(1)(B), to nonetheless "operate[] as an adjudication on the merits" that could then have potential preclusive effect on a further lawsuit.  Although the default rule is that, absent contrary language, a voluntary dismissal is without prejudice, the proviso states that, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."  FED. R. CIV. P. 41(a)(1)(B).  The January 2020 notice of voluntary dismissal under Rule 41(a)(1)(A) qualifies as a "notice of dismissal" within the meaning of the proviso, and, before filing that dismissal, "the plaintiff previously dismissed" two "state-court action[s]."[1]  The only remaining question under the

---

[1] It is irrelevant that the second Santa Clara action was filed after the federal action.  Rule 41(a)(1)(B) requires only that the other federal or state action have been "previously dismissed"; it does not say that the other action must have been a "prior" or "previous" lawsuit.  Because the second Santa Clara action was "previously dismissed" vis-à-vis the

rule is whether one of those two prior state-court dismissals was "based on or includ[ed] the same claim" as the dismissed federal action.

I agree with the majority that, in addressing whether two dismissed suits involve "the same claim" under Rule 41(a)(1)(B)—thereby triggering an "adjudication on the merits" that gives rise to a potential preclusive effect as to that claim—we should evaluate the relationship between those two previously dismissed actions by reference to the relevant preclusion principles. Because the point of Rule 41(a)(1)(B) is to give potential preclusive effect, in a third action, to the federal dismissal of a "claim" that was previously dismissed in an earlier action, it makes sense that the understanding of the "claim" at issue in the first two actions would likewise be guided by preclusion principles. Accordingly, two previously voluntarily dismissed suits will involve the "same claim" for purposes of Rule 41(a)(1)(B) if the first suit—had it been dismissed *with* prejudice—would have had preclusive effect on the second (federal) suit that the plaintiff voluntarily dismissed.

The majority errs, however, in concluding that the applicable preclusion principles here are supplied by the "same transactional approach" that generally governs under federal preclusion law. Although "[t]he preclusive effect of a federal-court judgment is determined by federal common law," *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008), the federal common law rule that governs when the federal court judgment was rendered in a *diversity* case is to apply (absent some contrary federal interest) the preclusion rules of the "state courts in the State in which the federal diversity court

---

federal action, it fits the language of the rule, as the district court correctly recognized.

sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).  Accordingly, the scope of the "claim" at issue in the federal suit that was dismissed should be governed by California's preclusion principles.[2]  And, of course, the "claim" at issue in the dismissed state court actions would also be governed by California preclusion principles.  *See Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759, 765 (9th Cir. 2007) ("Whether a prior state court judgment precludes relitigation of an identical claim in federal court depends on the preclusion rules of the state." (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))).  But "California courts, unlike federal courts, do not determine whether two suits involve the same cause of action by applying the 'same transaction or occurrence' or 'common nucleus of operative facts' test." *Furnace v. Giubino*, 838 F.3d 1019, 1024 (9th Cir. 2016). "Instead, California courts will hold that two suits involve the same cause of action when they involve the same 'primary right.'"     *Id*.     Accordingly, I would apply California's "primary rights" test to determine whether the

---

[2] The majority invokes *Semtek*'s exception, under which federal law will be applied when "state law is incompatible with federal interests." *See* Opin. at 12–13 (quoting *Semtek*, 531 U.S. at 509).  But the majority fails to identify any federal interest that would require application of federal law in determining whether the California law "claim" asserted in the two state court actions is the "same claim" as the California law "claim" asserted in the federal action.  In diversity cases, the parties' substantive rights are defined by state law, and if California law would treat the two California law "claims" as distinct, I fail to discern any conceivable federal interest in overriding that judgment.

"same claim" was at issue in the dismissed federal action and either or both of the dismissed state actions.[3]

In California, claim preclusion "arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (Cal. 2015). Because we are consulting preclusion principles only for the purpose of discerning the scope of the "claim" at issue in a suit that was dismissed *without* prejudice, the third requirement of a judgment on the merits is, of course, inapposite. But the other two requirements do serve to define the scope of the claim that was at issue in the

---

[3] The majority alternatively seeks to justify its application of federal res judicata principles on the ground that the application of federal or California standards does not make any difference to the *outcome* of this case. *See* Opin. at 13 (citing *Smith v. Bayer Corp.*, 564 U.S. 299, 307 n.6 (2011)). But in *Smith*, the Court held that it did not need to decide whether federal or West Virginia preclusion principles applied because no party had "identifie[d] any way in which federal and state *principles* of preclusion law differ in any relevant respect." 564 U.S. at 307 n.6 (emphasis added). Thus, in *Smith*, the *applicable substantive law* to be applied was the same either way (because both federal law and West Virginia law follow the Restatement of Judgments' standards). *Id*. I would agree that, if the substantive principles of federal and California law were the same, then, as in *Smith*, those identical standards could then be applied without having to determine whose law controls. But that is not the situation here, because California pointedly does *not* follow the Restatement's test, and so the applicable "principles of preclusion law" *do* differ in relevant respects (even if, on the facts of this case, the outcome is the same). Moreover, to the extent that, as the majority contends, there is no material conflict between federal and California preclusion law here, that would merely confirm that California law is not "incompatible with federal interests" and that, under *Semtek*, California preclusion principles should therefore be applied, not federal principles. *Semtek*, 531 U.S. at 509.

previously dismissed action, and so they are relevant and applicable here.

The "same parties" requirement is clearly satisfied. With respect to the second Santa Clara action, every party named in that suit was also named in the federal action—Rose Court and Teri Nguyen were plaintiffs in both of the actions, and Select Portfolio, Quality Loan, and U.S. Bank were named as defendants in both actions. Although U.S. Bank was not a named Defendant in the first Santa Clara action, the "same parties" requirement is arguably satisfied with respect to the first Santa Clara action as well. Under California law, the "same parties" requirement is satisfied if the new party in the second suit is "in privity" with a party in the first suit. *DKN Holdings*, 352 P.3d at 387. Here, U.S. Bank is arguably in privity with Select Portfolio and Quality Loan, because (1) U.S. Bank shares "an identity or community of interest" with Select Portfolio and Quality Loan (given that all three parties' asserted rights derive from the same alleged transfers that Rose Court challenges); (2) there is no apparent reason to think that U.S. Bank's interests in the first suit would not have been adequately represented by Select Portfolio and Quality Loan; and (3) U.S. Bank arguably "'should reasonably have expected to be bound' by the first suit." *Id*. at 387–88 (citation omitted). But I need not decide this privity point, because, as noted, U.S. Bank *was* named as a defendant in the second Santa Clara action. The "same parties" were thus involved in (at least) the federal action and the second Santa Clara action.

That leaves only the "same cause of action" requirement. In defining the scope of a "cause of action" for purposes of California preclusion principles, the "cause of action" at issue in a suit refers, not to any particular "count" alleged in the suit, but rather to the overall "right to obtain redress for

a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010). "Even where there are multiple legal theories upon which recovery might be predicated, *one injury* gives rise to only one claim for relief." *Id*. (emphasis added) (citation omitted). "Thus, under the primary rights theory, the determinative factor is the harm suffered," so that "[w]hen two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." *Id*. (citation omitted). Here, the primary right that Rose Court asserted in its second Santa Clara action was the right to possess the property in question, and the harm asserted was the loss of the property resulting from the completed foreclosure. The same harm, and the same primary right, was at issue in the federal action, which sought to block that same foreclosure against the same property. The fact that the specific counts and legal theories in the two actions differed does not matter.

Because the relevant requirements of California claim preclusion law were met, the second Santa Clara action and the federal action involved the "same claim" for purposes of Rule 41(a)(1)(B). Under that rule, therefore, the voluntary dismissal of the federal action, after the dismissal of the second Santa Clara action, "operates as an adjudication on the merits." FED. R. CIV. P. 41(a)(1)(B).

### III

However, the fact that a federal court judgment operates as an adjudication on the merits is a necessary, but not always a sufficient, condition "for claim-preclusive effect in other courts." *Semtek*, 531 U.S. at 506. That raises a further

question that must be answered but that the majority omits from its analysis.

Under *Semtek*, the claim-preclusive effect of the on-the-merits federal court dismissal would be governed by California law.  *Id*. at 508–09.  As noted, California preclusion law requires that three elements be satisfied in comparing the dismissed federal action and the claim that Rose Court proposed to add in the bankruptcy court.  Those three elements are (1) the same cause of action, (2) the same parties, and (3) a final adjudication on the merits in the first suit.  *DKN Holdings*, 352 P.3d at 386.  The third element is supplied by the effect of the proviso in Rule 41(a)(1)(B).  The relevant parties are the same, because Rose Court is the sole plaintiff in the proposed claim and was a plaintiff in the dismissed federal action, and because the three defendants in both actions are the same.  And, once again, the same primary right is at issue because the harm asserted in both actions is the loss of the property due to wrongful foreclosure.  The wrongful foreclosure claim proposed to be added in the bankruptcy court was thus barred due to the preclusive effect of the dismissal of the federal action.

For the foregoing reasons, I concur in part and in the judgment.